UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAUSTINO DIAZ-DE LA CRUZ,

Petitioner,

v.

BRUCE SCOTT, MARKWAYNE MULLIN,

Respondents.

CASE NO. C26-4059-BAT

**ORDER GRANTING HABEAS PETITION AND DIRECTING RELEASE**

Petitioner Faustino Diaz-De La Cruz is detained by Immigration and Customs Enforcement at the Northwest ICE Processing Center (NWIPC). He petitions the Court under 42 U.S.C. § 2241 for immediate release from detention or, in the alternative, immediate release under conditions of supervision, contending that he is detained based on a bond decision that was arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record. Dkt. 1. For the following reasons, the Court **GRANTS** the habeas petition (Dkt. 1) and **ORDERS** Petitioner's release within twenty-four (24) hours of this Order.

## BACKGROUND

Petitioner is a citizen and national of Mexico who has resided in the United States for approximately ten years. Dkt. 7, ex. B at 4. ICE officers arrested petitioner on August 25, 2026,

in Puyallup, Washington. Dkt. 11, ex. 3. He was subsequently transferred to the NWIPC where he remains detained. *Id.* Petitioner sought review of his detention, and a bond hearing was held on October 1, 2026, a recording of which is in the record.[1] Dkt. 12. At the conclusion of the hearing, the Immigration Judge denied bond, finding that petitioner was a flight risk. *Id.*; Dkt. 6, ex. A.

## DISCUSSION

The Court has authority to grant habeas relief if petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). This Court has jurisdiction to review immigration custody determinations for legal error, including whether an IJ's bond decision was arbitrary, applied the wrong legal standard, or violated due process. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

### A. Exhaustion of administrative remedies

Respondents argue that the Court should deny the petition due to petitioner's failure to exhaust his administrative remedies. Dkt. 9 at 4.

Whether petitioner must exhaust his administrative remedies in the habeas context "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency

[1] Petitioner previously filed an emergency habeas petition and emergency motion for TRO alleging that he was being detained without an individualized custody determination and was at risk of being transferred out of the district before the Court could adjudicate his habeas claim. After petitioner received a bond hearing, he sought voluntary dismissal of that petition and filed the instant petition challenging the bond determination. *See Diaz-De La Cruz v. Scott*, Case No. C26-3628-TMC (W.D. Wash.).

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Regarding the *Puga* factors, respondents argue that petitioner should be required to exhaust his administrative remedies because the Board of Immigration Appeals ("BIA") has subject-matter expertise for individual bond decisions, even if its review would not reach the constitutional claims at issue in this case, that this case does not present any novel legal issue or guidance value beyond this case, and that BIA review would preclude the need for judicial review. Dkt. 9 at 6.

First, although the BIA may have general subject-matter expertise in immigration custody and bond matters, it has no special expertise in resolving the constitutional and legal questions presented here and, indeed, lacks authority to adjudicate such matters. *See W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 20, 2026); s*ee also Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile"). This factor weighs against requiring prudential exhaustion.

Second, this case presents a legal question about whether the bond hearing met constitutional requirements, not a request for de novo review of the IJ's discretionary bond determination. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). A decision would likely "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). This factor weighs neutral.

And third, the Court finds no reason to delay review in a case where the claim is that constitutional and legal errors have resulted in continued detention. Moreover, given the lengthy delays inherent in the current appeals process, the Court finds petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)). The Court notes that the IJ has yet to prepare a memorandum decision in this case despite the fact that [X time] has passed since the hearing. This factor weighs against requiring prudential exhaustion. The Court therefore finds that the *Puga* factors weigh in favor of waiving the exhaustion requirement.

Regarding the *Laing* factors, respondents argue that petitioner has not demonstrated irreparable harm unique to him. Dkt. 9 at 7-8. However, courts in this District have noted that the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer"

than six months. *See Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months); *see also Soriano*, 2026 WL 969764, at *4 (finding, where petitioner brought habeas petition challenging his bond denial, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). Under these circumstances, the Court finds administrative remedies are inadequate or not efficacious and that even if petitioner's administrative appeal is ultimately successful, he will have suffered irreparable injury during the long wait.

For all these reasons, the Court waives any requirement that petitioner exhaust his administrative remedies before seeking habeas relief.

**B. The IJ's bond determination**

Petitioner argues the IJ's bond determination was arbitrary and an abuse of discretion. Dkt. 1 at 5. Respondents argue petitioner has not identified valid constitutional or legal errors that would entitle him to release. Dkt. 9 at 8.

This Court's habeas review of the IJ's determination as to dangerousness or flight risk is for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026)

(quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240).

When determining whether a noncitizen is a danger to the community or risk of flight, the IJ weighs nine factors pursuant to BIA precedent. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). These nine factors that an IJ may consider include any or all of the following:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 783–84.

Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [petitioner] posed a flight risk" and a danger. *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, No. C25-585, 2025 WL 3466312,

at *7 (D.R.I. Dec. 3, 2025)). The Court finds that it could not.

In support of his motion for bond redetermination, petitioner submitted evidence addressing the *Guerra* factors as follows: (1) he has resided in the United States for ten years, (2) he has a fixed residence in Puyallup, Washington with his wife and step-son, (3) he has longstanding employment and operation of a licensed carpet-installing business, (4) he has a history of filing federal income tax returns, (5) he has a U.S. citizen sponsor who has committed to provide financial support and assist him with employment, (6) he has support in the community, (7) he has no criminal history, and (8) he has no history of failing to appear for court proceedings. Dkt. 6, ex. B. At the hearing, he argued that this evidence supported his request for bond. Dkt. 12 (hearing recording). He stated that he has filed an application for asylum and is gathering information to supplement that application. *Id.* He stated that his church community was raising money to pay his bond if he was granted one and asked that bond be set at $5,000. *Id.*

The government submitted as evidence petitioner's form I-213, record of deportable/inadmissible alien. Dkt. 11, ex. 3. At the hearing, the government argued petitioner was a flight risk. Dkt. 12. The government stated petitioner was issued a voluntary return and expedited removal in 2010,[2] he entered the United States without inspection at an unknown date after that time, and he filed his asylum application only after he was detained, which was more than one year after he entered the country and which seeks asylum from a place he has not been to in 10 years. *Id.* The government stated even though he had been detained for over a month, petitioner had not applied for cancellation of removal, which both the IJ and counsel for petitioner noted petitioner was not eligible for. *Id.* And the government asserted petitioner's

[2] The Court notes that petitioner was a minor in 2010.

proposed sponsor gave only a vague statement and was apparently a coworker. *Id.*

At the conclusion of the hearing, the IJ stated petitioner has a serious immigration history, he has a one-year problem with his asylum application, the application contains no information and the likelihood of success is very limited, and his best avenue for relief is voluntary departure. Dkt. 12. The IJ did not find petitioner was a danger but did find petitioner is a flight risk and denied bond and/or conditions of release. *Id.* The IJ issued an order on a check-box form with boxes checked to indicate: it was ordered that the request for a change in custody status was denied; bond remained at no bond based flight risk; conditional release was denied under any conditions set by ICE/DHS; and ability to pay was considered. Dkt. 6, ex. A.

The IJ noted petitioner's immigration history and her assessment that he had a low likelihood of success on his asylum application. But there is nothing to indicate the IJ considered the other *Guerra* factors. Petitioner submitted he has resided in the United States for ten years, resides at a fixed residence, has consistently worked and filed federal tax returns, has a U.S. citizen sponsor willing to support him, is actively pursuing immigration relief, and has a church community supporting him including by raising money for his bond. The IJ provided no discussion of why she found these factors are outweighed by his immigration history, which primarily occurred when he was a minor, and her assessment of the merits of his asylum application. In other words, the IJ noted the existence of this evidence but did not otherwise meaningfully engage with the evidence or articulate a reasoned basis for finding that the evidence of petitioner's immigration history and his asylum application outweighed all other factors in the bond determination. Additionally, the IJ did not provide any analysis whatsoever as to whether any conditions of release could ensure petitioner's appearance at future immigration proceedings or the fact that he proposed a bond of $5,000.

The Court therefore concludes the IJ abused her discretion in finding that petitioner was a flight risk such that no conditions of release could ensure his appearance at future immigration proceedings. Accordingly, the Court finds that petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

**C. Remedy**

Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026), at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond). Accordingly, the Court **ORDERS** petitioner's immediate release from immigration detention.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall **RELEASE** petitioner with reasonable conditions within 24 hours of the date and time this Order is filed.

3. Respondents shall file a **CERTIFICATION** that petitioner has been released no

later than 48 hours from the date and time this Order is filed.

4. Petitioner's counsel may move for EAJA fees and costs consistent with the law and the statute.

DATED this 23rd day of November, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge